UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN


CAMARO IMPEX GENERAL TRADING LLC

        **Petitioner,**

v.                                      **CASE NO.: 2:21-MC-51162**

UNITED STATES OF AMERICA,


        **Respondent.**

_____/


**PETITIONER'S MOTION AND MEMORANDUM OF LAW
TO REQUEST REMISSION OF SEIZED FUNDS**

     NOW COMES Petitioner CAMARO IMPEX GENERAL TRADING LLC, by and through counsel, and pursuant to Federal Rule of Criminal Procedure 41(g), and hereby requests judicial intervention and the return of improperly seized funds. In support of their motion, Petitioner states as follows:

**FACTUAL BACKGROUND**

   1.  Petitioner is a trading company based in Dubai, United Arab Emirates that imports and exports throughout the world. Petitioner maintains an office at No. 10-28 Naser Alawadhi Building, Al Garhoud Area, Makani, Dubai. Petitioner's email address is camaroimpex@outlook.com. Petitioner operates using Trade License Petitioner is registered with the Dubai Department of Economy and operates under the license number 838120. [*See* Exhibit 1]

2.   Petitioner maintains business bank accounts at Alfa Exchange Bank,[1] in Deira Dubai.

3.   Petitioner's accounts are denominated in UAE Dirhams. At the current rate of exchange, one United States dollar equals approximately 3.67 UAE Dirhams.[2] Since the United States Dollar is the currency of the World Reserve, when Petitioner internationally sells or purchases items, Petitioner provides the purchase and/or settlement details to its banks, which then complete the appropriate currency exchange.

4.   Petitioner purchases inventory for resale from vendors around the world.

5.   Petitioner trades in various commodities.  Petitioner pays for purchases using the settlement instructions from the vendors, which request United States dollars to be credited to their accounts. To effectuate the vendor requests for wire transfer payments, wire transfer payments require an intermediary bank to complete the transfer.

6.   On December 29, 2020, a wire transfer payment totaling $6,733.00 USD was seized while in transit from petitioner's account maintained at Alfa Exchange Bank to the account of Geng Xin Precisio maintained at First Commercial Bank, Taipei City, Taiwan. On May 3, 2021, a wire transfer payment totaling $29,899.00 USD

---

[1] Alfa Exchange Bank is a bank headquartered in Deira, Dubai in the United Arab Emirates. The bank provides business and commercial banking services including currency conversion and Western Union services. There are no branches or facilities in the United States.
[2] Exchange rate calculated on September 9, 2021.

was seized while en route to Louis Adhesive Tapes account maintained at Krung Thai Bank, in Bangkok Thailand. These seizures are attached hereto as Exhibit 2.

7. Petitioner's undersigned counsel suspects that these seizures were executed at the guidance and direction of the United States Attorney's Office for the Eastern District of Michigan due to the fact that the circumstances of these seizures were identical to the seizures that were the subject of three recently filed petitions filed by undersigned counsel on behalf of *Advotis General Trading, LLC v. United States of America*, 2:21-MC-50963, *Perfect Frames LLC v. United States of America*, 2:21-MC-51029, and *Capricorn Goods Wholesalers LLC v. United States of America*, 2:21-MC-51128.

8. Undersigned counsel for the Petitioner suspects the seizures of funds from these four separate companies, Advotis General Trading LLC, Perfect Frames, and Capricorn Goods Wholesalers, arise out of the same investigation that is currently conducted by the Detroit Field Office of the Internal Revenue Service, Criminal Investigation Division, under the auspices of the United States Attorney's Office for Eastern Michigan. Undersigned counsel arrives at this conclusion since the seizures in the instant case were executed within the same timeframe and in the same manner and means that were utilized in the Advotis General Trading, Perfect Frames, and Capricorn Goods Wholesalers seizures.

9. In January 2021, the owners of Advotis Trading and Perfect Frames contacted AUSA Gjon Juncaj and Internal Revenue Service Special Agent Derek Newsome ("S.A. Newsome"), who acknowledged responsibility for the seizures

described in the aforementioned petitions. [*See Advotis Trading* at ECF No. 3, Exhibit 4; *See Perfect Frames* at ECF No. 2, Exhibits 3-8 ] Petitioner's conclusion that the seizure of Camaro's wire transfers is the product of the United States Attorney's Office and the Internal Revenue Service Criminal Investigation Division efforts is necessary because Petitioner, when deprived of it's property, was not provided with a copy of any search or seizure warrant nor a copy of the search or seizure inventory or any information regarding these seizures, all in violation of Fed. R. Crim. Pro. 41.

10. The wire transfer payments were seized from intermediary banks after being debited from Petitioner's United Arab Emirates-based account. One wire transfer payment was seized via JP Morgan Chase Bank. The second wire transfer payment was seized via Deutsche Bank Trust Company.

11. JP Morgan Chase maintains its headquarters in the State of New York and is located at 270 Park Avenue, New York, New York, 10017.

12. Deutsche Bank Trust Company bank maintains its headquarters at 60 Wall Street, New York, New York, 10004.

13. The two wire transfers were both attempted from Alfa Exchange Bank, located in Dubai, United Arab Emirates.  The ostensible receivers of these funds (the vendors) are both located outside of the United States, in Taiwan and Thailand. The wire transfer payments did not originate, terminate or traverse the Eastern District of Michigan.

14. The banker at Alfa Exchange Bank, after being alerted by personnel at JP Morgan Chase, informed Petitioner in a SWIFT teletype message the following

information related to May 3, 2021 seizure, This message read, in part:

ANY INQUIRIES REGARDING THE PAYMENT
CAN BE REFERRED DIRECTLY TO:
SPECIAL AGENT DEREK NEWSOME
DEREK.NEWSOMECI.IRS.GOV
UNQUOTE:
PLS CONTACT THEM DIRECTLY TO
CLARIFY THIS CASE ACCORDINGLY.
BEST REGARDS, DUANGHATHAI B.
PAYMENT INVESTIGATION / GPSD.
[*See* Exhibit 3]:

15. As the United States Government, via the United States Department of

Justice and associated federal investigative agencies, is the only entity with the

capability to seize wire transfer payments transiting the United States dollar accounts

maintained at intermediary banks, Petitioner concludes that the United States

Government is in possession of two wire payments, totaling $36,63200 USD. This

conclusion is further bolstered by the facts that the time, place, manner and means of

these two seizures are similar to other seizures previously discussed in the Advotis

Trading, Perfect Frames, and Capricorn Goods Wholesalers petitions and the United

States' responsive pleadings.

16.  Petitioner retained counsel to effectuate repatriation of the seized funds.

17.  Counsel then launched their own efforts to discover if constructive and/or

actual notice had been given by the United States as to the status of the funds.

Counsel's actions included searching www.forfeiture.gov, the public depository of

forfeiture actions maintained by the Department of Justice on behalf of itself and all

other federal agencies with statutory forfeiture authority. No actual notice was

discovered up to and including the date of this filing. [*See* Exhibit 4] Counsel

reviewed open and closed court dockets and pleadings potentially involving

Petitioner. Counsel found no civil or criminal actions initiated up to and including

the date of this filing. [*See* Exhibit 5]

18.  At no time prior to the first seizure on December 29, 2020, was Petitioner

informed that Petitioner's wire transfers were suspicious or subject to seizure and

forfeiture by the United States Government. At no time did the seizing agency – the

Internal Revenue Service – nor the Department of Justice, Eastern District of

Michigan, notify Petitioner that they had seized funds, nor did they provide a copy

of the seizure warrant.  Additionally, Petitioner was not served a summons or

complaint for any civil action, thereby denying Petitioner the fundamental right to

due process to challenge the seizures.

19.  Since the initial wire payment seizure of $6,733.00 USD on December 29,

2020,Petitioner has been collectively deprived of $36,632.00 USD of its working

capital for over 127 days by the improper seizure of two wire transfer payments,

imposing a severe financial hardship.

RELEVANT LAW

20. Federal Rule of Criminal Procedure 41(g) provides:

> MOTION TO RETURN PROPERTY. A person aggrieved by an unlawful search and
> seizure of property or by the deprivation of property may move for the
> property's return. The motion must be filed in the district where the property
> was seized. The court must receive evidence on any factual issue necessary to
> decide the motion. If it grants the motion, the court must return the property to
> the movant, but may impose reasonable conditions to protect access to the
> property and its use in later proceedings.

21. A Rule 41(g) Motion for the return of property should be granted if the

government has no legitimate reason to continue holding the items. *See e.g. United*

*States v. Francis,* 646 F.2d 569, 577 (6th Cir. 1981). The Court must weigh "the

legitimate needs of the United States against the property rights of the moving

party…" *United States v. Popham*, 382 F. Supp. 2d 942, 955-56 (E.D. Mich. 2005).

22. Other relevant portions of Federal Rule of Criminal Procedure Rule 41,

Search and Seizure, include:

> (b) VENUE FOR A WARRANT APPLICATION. At the request of a federal law
> enforcement officer or an attorney for the government:
>   (1) a magistrate judge with authority in the district—or if none is reasonably
>   available, a judge of a state court of record in the district—has authority to issue
>   a warrant to search for and seize a person or property located within the district;
>   (2) a magistrate judge with authority in the district has authority to issue a
>   warrant for a person or property outside the district if the person or property is
>   located within the district when the warrant is issued but might move or be
>   moved outside the district before the warrant is executed;
>   (3) a magistrate judge—in an investigation of domestic terrorism or
>   international terrorism—with authority in any district in which activities related
>   to the terrorism may have occurred has authority to issue a warrant for a person
>   or property within or outside the district;
>   (4) a magistrate judge with authority in the district has authority to issue a
>   warrant to install within the district a tracking device; the warrant may
>   authorize use of the device to track movement of a person or property located
>   within the district, outside the district, or both; and
>   (5) a magistrate judge having authority in any district where activities related to
>   the crime may have occurred, or in the District of Columbia, may issue a
>   warrant for property located outside the jurisdiction of any state or district, but
>   within any of the following:
>         (A) a United States territory, possession or commonwealth;
> (c) Persons or Property Subject to Search or Seizure. A warrant may be issued for
> any of the following:
>   (1) evidence of a crime;
>   (2) contraband, fruits of a crime, or other items illegally possessed;
>   (3) property designed for use, intended for use, or used in committing a crime;
>   or

(4) a person to be arrested or a person who is unlawfully restrained.

(d) OBTAINING A WARRANT.

(1) *In General.* After receiving an affidavit or other information, a magistrate judge—or if authorized by Rule 41(b), a judge of state court of record—must issue the warrant if there is probably cause to search for and seize a person or property or to install and use a tracking device.

(2) *Requesting a Warrant in the Presence of a Judge.*

(A) *Warrant on an Affidavit.* When a federal law enforcement officer or an attorney for the government presents an affidavit in support of a warrant, the judge may require the affiant to appear personally and may examine under oath the affiant and any witness the affiant produces.

(B) *Warrant on Sworn Testimony.* The judge may wholly or partially dispense with a written affidavit and base a warrant on sworn testimony if doing so is reasonable under the circumstances.

(C) *Recording Testimony.* Testimony taken in support of a warrant must be recorded by a court reporter or by a suitable recording device, and the judge must file the transcript or recording with the clerk, along with any affidavit.

(3) *Requesting a Warrant by Telephonic or Other Reliable Electronic Means.* In accordance with Rule 4.1, a magistrate judge may issue a warrant based on information communicated by telephone or other reliable electronic means.

(e) ISSUING THE WARRANT.

(1) *In General.* The magistrate judge or a judge of a state court of record must issue the warrant to an officer authorized to execute it.

(2) *Contents of the Warrant.*

(A) *Warrant to Search for and Seize a Person or Property.* Except for a tracking device warrant, the warrant must identify the person or property to be searched, identify any person or property to be seized, and designate the magistrate judge to whom it must be returned. The warrant must command the officer to:

(i) execute the warrant within a specified time no longer than 14 days;

(ii) execute the warrant during the daytime, unless the judge for good cause expressly authorizes execution at another time; and

(iii) return the warrant to the magistrate judge designated in the warrant.

(f) Executing and Returning the Warrant.

(1) *Warrant to Search for and Seize a Person or Property.*

(A) *Noting the Time.* The officer executing the warrant must enter on it the exact date and time it was executed.

(B) *Inventory.* An officer present during the execution of the warrant must prepare and verify an inventory of any property seized. The officer must do so in the presence of another officer and the person from whom, or from whose premises, the property was taken. If either one is not present, the

officer must prepare and verify the inventory in the presence of at least one other credible person. In a case involving the seizure of electronic storage media or the seizure or copying of electronically stored information, the inventory may be limited to describing the physical storage media that were seized or copied. The officer may retain a copy of the electronically stored information that was seized or copied.

(C) *Receipt.* The officer executing the warrant must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken or leave a copy of the warrant and receipt at the place where the officer took the property. For a warrant to use remote access to search electronic storage media and seize or copy electronically stored information, the officer must make reasonable efforts to serve a copy of the warrant and receipt on the person whose property was searched or who possessed the information that was seized or copied. Service may be accomplished by any means, including electronic means, reasonably calculated to reach that person.

(D) *Return.* The officer executing the warrant must promptly return it—together with a copy of the inventory—to the magistrate judge designated on the warrant. The officer may do so by reliable electronic means. The judge must, on request, give a copy of the inventory to the person from whom, or from whose premises, the property was taken and to the applicant for the warrant.

(3) *Delayed Notice.* Upon the government's request, a magistrate judge—or if authorized by Rule 41(b), a judge of a state court of record—may delay any notice required by this rule if the delay is authorized by statute.

23. The Due Process Clause of the Fifth Amendment provides that, "no person shall . . . be deprived of life, liberty or property without the due process of law." This Amendment requires that an individual receives notice and hearing before real property can be seized. *United States v. James Daniel Good Real Property, et al.*, 510 U.S. 43, 114. S. Ct. 492 (1993).

## ARGUMENT

24. In a flagrant violation of Petitioner's due process rights, Petitioner was not provided nor informed of the existence of any officially sanctioned seizing documents pertaining to the two wire transfer seizures totaling $36,632.00 USD.

9

25. Petitioner is unable to determine the statutory basis for the seizure of funds; the status of the funds; nor the status of any seizure and/or forfeiture actions taken on behalf of the United States.

26. In addition to the standards required by the United States Code, the seizure and forfeiture of property are also guided by policies of the Department of Justice[3] and Internal Revenue Service.[4] Both of these agencies mandate that any seizure would have to be made under a probable cause standard, and that any forfeiture be made under a preponderance of the evidence. [*See* U.S. Department of Justice Asset Forfeiture Policy Manual, Chapter 2, Section I, Seizure and Restraint Overview; Internal Revenue Manual 9.7.2.7.1, Seizure Warrant, and Internal Revenue Manual 9.7.2.7.8, Burden of Proof].  Neither standard has been met in the instant case.

27. Additionally, the Department of Justice[5] and the Internal Revenue Service[6] also have notice requirements which mirror the standard of the United States Code. Requirement for reasonable notice is usually 90 days. [*See* U.S. Department of Justice Asset Forfeiture Policy Manual, Chapter 2, Section I, Seizure and Restrain Overview, p. 22 paragraph 2 [… to preserve the government's ability to pursue civil forfeiture of the asset, the government <u>must</u>, within 90 days from the date the claim

---

[3] Available at https://www.justice.gov/criminal-afmls/file/839521/download
(last visited September 9, 2021).
[4] Available at https://www.irs.gov/irm/part9/irm_09-007-002 (last visited on September 9, 2021).
[5] U.S. Department of Justice Asset Forfeiture Policy Manual, Chapter 2, Section I, Seizure and Restraint Overview and Internal Revenue Manual 9.7.2.9.3, Time Limitations.
[6] Internal Revenue Manual 9.7.2.9.3, *Time Limitations.*

was "filed" with the seizing agency in the administrative proceeding: (1) commence

a civil forfeiture action against the asset; (2) obtain a criminal indictment or file a

criminal information "containing an allegation that the property is subject to

forfeiture" and "take the steps necessary to preserve [the government's] right to

maintain custody of the property as provided in the applicable criminal forfeiture

statute"; or (3) return the property;" *See* Internal Revenue Manual 9.7.2.9.3, *Time*

*Limitations* (3),"A reasonable interpretation is that a complaint <u>should</u> be filed within

90 days from the date of seizure."]

28. Additionally, since Petitioner has no presence in the District of Eastern

Michigan and none of the seized wire transfer payments originated, terminated, or

traversed the District of Eastern Michigan, Petitioner challenges the jurisdictional

basis for the seizures on the basis of venue. Pursuant to 28 U.S.C. § 1391, Venue

Generally (b) —A civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants
> are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or
> omissions giving rise to the claim occurred, or a substantial part of
> property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as
> provided in this section, any judicial district in which any defendant is
> subject to the court's personal jurisdiction with respect to such action.)

There are no facts to support that venue is proper in the District of Eastern

Michigan.

29. As of the date of this filing, the United States government has retained control

of the seized funds for over 127 days and has yet to provide notice to Petitioner of

any seizure or forfeiture proceedings.

## CONCLUSION

30. The Government, through its seizures of Petitioner's assets, has *de facto* seized the business of Petitioner without affording it notice and hearing, in violation of constitutionally mandated due process.

31. In addition to violations of procedural due process, the seizure of Petitioner's funds are in contravention to the policies of the Department of Justice and the Internal Revenue Service.

32. Petitioner's efforts to discover any information relevant to the seizures have been fruitless as Petitioner has not received the mandatory disclosure required by statute and the Federal Rules of Criminal Procedure, nor has Petitioner been apprised of any forfeiture activity by the service of a summons and complaint, described under Fed. Rule Civ. Pro. G.

33. Petitioner is unable to understand any potential charges or the basis for seizure.

34. Petitioner has no information as to the status of the seized funds to protect access to the property and its use in later proceedings.

35. Pursuant to Fed. R. Crim. Pro. Rule 41 (g), Petitioner respectfully requests that this Honorable Court order the return of seized funds. The Government's flagrant disregard of the notice and due process requirements place an onerous burden upon Petitioner in discovering the circumstances surrounding the seizure of Petitioner's funds and in successfully protecting Petitioner's property, as well as

creating a financial hardship on the Petitioner as it does not have access to over

$36,000.00 USD of it's working capital. This conduct should bar the Government

from reinstating this case in any jurisdiction. Petitioner respectfully suggests that the

Government's conduct rises to a level that entitles to Petitioner to earned interest on

the sequestered funds as well as to attorney's fees for costs in defending Petitioner's

property.

## **PRAYER FOR RELIEF**

WHEREFORE, pursuant to the above code provisions, and for the reasons

stated above, Petitioner CAMARO IMPEX GENERAL TRADING LLC

requests that this Honorable Court enter an Order for the return of $36,632.00 USD

to Petitioner; as well as interest, as permitted by statute; Petitioner's reasonable costs

and attorney's fees; and an Order barring the Government from reinstituting this case

in any jurisdiction.

Respectfully submitted,

*/s/ Rebecca L. Castaneda*
Rebecca L. Castaneda
Florida Bar No. 1007926
The Castaneda Law Firm
506 N. Armenia Avenue
Tampa, Florida 33609-1703
(813) 694-7780
rc@attorneyrebeccacastaneda.com

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been electronically

filed on September 9, 2021, with the Clerk of the Court using the CM/ECF system.


Respectfully submitted,

*/s/Rebecca L. Castaneda*
Rebecca L. Castaneda
Florida Bar No. 1007926
The Castaneda Law Firm
506 N. Armenia Avenue
Tampa, Florida 33609-1703
(813) 694-7780
rc@attorneyrebeccacastaneda.com

14